**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **ROBERT C. MORRIS, #1311083,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **A-11-CV-739–SS** |
| | § | |
| **RICK PERRY, Governor,** | § | |
| **State of Texas,** | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE SAM SPARKS
        UNITED STATES DISTRICT JUDGE

Plaintiff Robert C. Morris, proceeding pro se, filed this civil rights lawsuit under 42 U.S.C. § 1983 complaining of alleged violations of various constitutional rights by the establishment of an annual copayment for health care services in the Texas prison system under recently amended Texas Government Code § 501.063.

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Morris's Complaint (Document No. 1), Defendant Rick Perry's Motion to Dismiss (Document 13), and Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim (Document 15). The defendant did not file a reply. Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis. *See* Order (Aug. 25, 2011) (Document 6).

Morris is an inmate in the custody of the Texas Department of Criminal Justice (TDCJ), currently confined at the Stevenson Unit in Cuero, Texas. Compl. at 1. Morris began serving his sentence in 2005. *Id.* He brings this action under 42 U.S.C. § 1983, challenging Section 501.063 of the Texas Government Code, as amended by the Texas Legislature in the most recent legislative session and made effective September 28, 2011. *See* SB 1, Acts 2011, 82nd Tex. Leg., 1st C.S., ch. 4 § 65.02 (enacted).

Section 501.063 previously required the assessment of a $3 copayment for an inmate's health care visit when the inmate initiated that visit. TEX. GOV'T CODE § 501.063(a) (1999). Earlier this year, the Texas Legislature amended Section 501.063 to institute a $100 health services fee when an inmate "initiates a visit to a health care provider." TEX. GOV'T CODE § 501.063(a)(1) (2011). The $100 fee is an annual fee that "covers all visits to a health care provider that the inmate initiates until the first anniversary of the imposition of the fee." TEX. GOV'T CODE § 501.063(a)(2). The fee is paid out of the inmate's trust fund, and if the fund balance is insufficient to cover the $100 copayment fee, then one-half of each deposit to the fund shall be applied to the balance owed until the total amount owed is paid. TEX. GOV'T CODE § 501.063(a)(3). The statute continues to direct TDCJ to adopt policies to "ensure that before any deductions are made from an inmate's trust fund under this section, the inmate is informed that the health care services fee will be deducted from the inmate's trust fund." TEX. GOV'T CODE § 501.063(b). The statute also continues to direct that TDCJ "may not deny an inmate access to health care as a result of the inmate's failure or inability to make a copayment." TEX. GOV'T CODE § 501.063(d). Subsequent to the enactment, TDCJ made a notice

regarding the new copayment available to inmates at each facility. T.D.C.J. Health Care Fee Notice to Offenders (Def. Mot. Ex. C).

Morris alleges that he has a chronic knee injury that regularly requires prescription medications as treatment, some of which require periodic renewal. *See* Compl. at 2. He further alleges that he will be subject to the $100 copayment charge, which will be assessed against his inmate trust fund account, an account that holds funds that he occasionally receives as gifts from family and friends. *Id.* Morris seeks a declaration that the amended statute violates his constitutional rights, specifically, that the assessment of the copayment is cruel and unusual punishment in violation of the Eighth Amendment, violates the Due Process Clause of the Fourteenth Amendment, is an ex post facto violation, and is an unreasonable seizure under the Fourth Amendment. *Id.* at 3. He also seeks an injunction compelling the defendant to cease charging medical copayments to state prisoners. *Id.*

## DISCUSSION AND ANALYSIS

### I.  STANDARD OF REVIEW

#### A.  Rule 12(b)(6) Standard

Motions for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) are appropriate when a complaint fails to state a legally cognizable claim. Generally, a court ruling on a Rule 12(b)(6) motion considers the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take proper judicial notice. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). When evaluating a motion to dismiss under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all pleaded facts must be taken as true. *See, e.g., Leatherman v. Tarrant County Narcotics Intelligence*

*& Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

To survive a Rule 12(b)(6) motion to dismiss, however, a complaint must include facts that "raise a right to relief above the speculative level" and into the "realm of plausible liability." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 557 n.5, 127 S. Ct. 1955, 1965, 1966 n.5 (2007). In *Twombly*, the Supreme Court recognized that Rule 12(b)(6) must be read in conjunction with Rule 8(a)–which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief"–and concluded that this standard demands more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 555, 557, 127 S. Ct. at 1965-66. As a result, a complaint must contain sufficient factual matter, which if accepted as true, "state[s] a claim to relief that is plausible on its face." *Id.* at 570, 127 S. Ct. at 1974. In *Ashcroft v. Iqbal*, the Supreme Court made clear that this plausibility standard is not a "probability requirement," but instead imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." 556 U.S. 662, –, 129 S. Ct. 1937, 1949 (2009).

Accordingly, when assessing the sufficiency of a complaint, a court must distinguish factual contentions that allege conduct on the part of the defendant that, if true, would establish the elements of the asserted claim, from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Although courts must assume the veracity of the facts asserted in a complaint, they are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950. A court considering a motion to dismiss should first separate the factual and legal elements of claim, which involves "identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth" and may be disregarded. *Id.* Second, a court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* In other words, a complaint must do more than merely allege the plaintiff's entitlement to relief. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). This plausibility determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. At the same time that courts examine a complaint for the plausibility of its factual allegations, courts remain obligated to construe a pro se complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007).

## B. Rule 12(b)(1) Standard

Similarly, when considering a Rule 12(b)(1) motion, a court must accept a complaint's factual allegations as true. *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011). The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss. *Id.* A court may find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Wolcott*, 635 F.3d at 762-63. In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The Fifth Circuit has explained that when a motion to dismiss for lack of jurisdiction is filed in conjunction with other Rule 12 motions, a court should consider the Rule 12(b)(1) jurisdictional

challenge before addressing any motions challenging the merits. *Id.*; *see also In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010).

## II. ANALYSIS

### A. Eleventh Amendment Immunity

Perry argues that this case should be dismissed under Rule 12(b)(1) because he has absolute legislative immunity in his individual capacity from suit and liability, and in his official capacity from suit. Mot. to Dismiss at 5-8. Perry also asserts immunity under the Eleventh Amendment. *Id.* at 8-9. He argues that the exception to Eleventh Amendment immunity available through the *Ex parte Young* doctrine is limited to suits challenging the enforcement of statutes the defendant-state official has some responsibility for enforcing. *Id.* Perry asserts that enforcement of the health care copayment fee statute is not within the authority of the Texas Governor, but rather falls within the purview of the Texas Department of Criminal Justice, per Texas Government Code § 501.063. In short, Perry asserts that Morris has sued the wrong state defendant.

Morris responds to Perry's arguments for a dismissal for lack of jurisdiction by arguing that legislative immunity is inapplicable because Perry is not being sued for his legislative actions, but based on his executive power to enforce and uphold the laws of the state. Opp. at 3-4. With regard to Perry's assertion of Eleventh Amendment immunity, Morris counters that Perry may be sued under the *Young* exception because the Governor of Texas has a duty under the Texas Constitution to "cause the laws to be faithfully executed" and the Texas Department of Criminal Justice is "merely an Administrative Department created by the Governor." *Id.* at 4 (citing TEX. CONST. art. 4, § 10). Morris alternatively argues that if Perry is not a proper defendant, the Court should substitute the Executive Director of the TDCJ, Brad Livingston. *Id.* at 5.

Legislative immunity does not appear to be applicable to Perry as Morris's complaint concerns the enforcement of the health care statutory provision and not any involvement by Perry in the legislative process related to the provision. With regard to possible immunity under the Eleventh Amendment, the Fifth Circuit has explained that the exception does indeed require that the sued official have "'some connection with the enforcement of the act' in question or be 'specially charged with the duty to enforce the statute' and be threatening to exercise that duty." *Okpalobi v. Foster*, 244 F.3d 405, 414-15 (5th Cir. 2001) *(en banc)* (quoting *Ex parte Young*, 209 U.S. 123, 157, 158, 28 S. Ct. 441, 453 (1908)). "[T]he *Young* principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required 'connection,' but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* at 416. In *Okpalobi*, the Fifth Circuit concluded that the governor and attorney general in that case enjoyed Eleventh Amendment immunity after it found no particular duty set forth in state law specifically charging those defendants with enforcement of the challenged statute, or any action on the part of the defendants to enforce the statute. *Id.* at 424.

For the same reasons, Perry also retains the protections of Eleventh Amendment immunity in this case. Under the provision at issue, Texas Government Code § 501.063, it is the TDCJ that is charged with promulgating and administering the new copayment policy. As a result, the proper state official defendant for Morris's lawsuit is the executive director of TDCJ, Brad Livingston. The Court should grant the motion to dismiss in part by dismissing Perry as a defendant on the basis of his Eleventh Amendment immunity. It should further construe the argument that Livingston should be substituted for Perry as a motion for leave to amend the complaint to substitute Brad Livingston in his official capacity as Executive Director of the Texas Department of Criminal Justice, for

defendant Perry, and also grant the motion to amend by substituting defendants. *See* FED. R. CIV. P. 15(a)(2).

Although Livingston should be substituted for Perry, the case should nevertheless be dismissed for failure to state a claim upon which relief should be granted. Under 28 U.S.C. § 1915(e)(2)(B), the Court shall dismiss a case at any time if the Court determines (among other things) that the complaint fails to state a claim upon which relief may be granted. The Court need not wait until the substitution of parties is accomplished and should resolve the motion to dismiss on the basis of a failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**B.     Challenges to Texas Government Code § 501.063**

**1.     Cruel and Unusual Punishment**

Morris contends that application of Texas Government Code § 501.063 to collect a $100 medical copayment constitutes cruel and usual punishment under the Eighth Amendment. Compl. at 3; Opp. at 5-6. More specifically, Morris argues that the Eighth Amendment prohibits prisoners from being exposed to hardships unrelated or unnecessary to effectuating legitimate penological goals and the statute at issue was intended to address budgetary shortfalls and not a legitimate penological goal. *Id.* at 5. Morris asserts that a prisoner is already being punished for his crime, and requiring a prisoner to also pay money just so the State can "keep him in prison" is cruel. *Id.* at 6. Morris also notes that the First Court of Appeals of Texas once stated in an opinion that free medical care is recognized under Texas statute and the U.S. Constitution. *Id.* (citing *Tex. Dep't of Corrs. v. Sisters of St. Francis of St. Jude Hosp.*, 836 S.W.2d 719 (Tex. App.–Hous. [1st] 1992, no writ)).

Perry argues that Morris fails to state a claim under the Eighth Amendment because he does not allege that he has been or will be denied medical care, or that he will suffer any physical harm

as result of the change from the statutory $3 copayment per medical visit to the single $100 annual copayment. Mot. at 10. Perry further emphasizes that the statute specifically states that TDCJ may not deny access to medical care based on an inmate's inability or failure to pay the copayment. *Id.* at 10-11. Lastly, Perry asserts that there is no constitutional right to medical treatment that is cost-free, and as a result, Morris fails to state an Eighth Amendment claim. *Id.* at 11.

Addressing financial constraints is part of maintaining an effective prison system, and budgetary concerns are a recognized legitimate penological interest. *See, e.g., Searles v. Dechant*, 393 F.3d 1126, 1132 (10th Cir. 2004) (noting budgetary concerns as legitimate penological interest); *Williams v. Morton*, 343 F.3d 212, 218 (3d Cir. 2003) (same); *see also Hutchinson v. Belt*, 957 F. Supp. 97, 100 (W.D. La. 1996) ("The state has a legitimate interest in the efficient use of prison resources."); *Robinson v. Fauver*, 932 F. Supp. 639, 645 (D. N.J. 1996) (recognizing as legitimate governmental interest on part of prison system the "interest of promoting inmate responsibility and prudent management of money, conserving the resources of the state, and defraying the burgeoning cost of inmate medical care"). Morris challenges only the legitimacy of the penal objective behind the amended statute, but does not suggest that the new statutory copayment or the TDCJ Notice does not reasonably relate to the penological objective. *See Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987) (prison policy "is valid if it is reasonably related to legitimate penological interests"). Indeed, he asserts that the copayment requirement is directly tied to budgetary concerns. *See, e.g.,* Opp. at 5.

Moreover, Morris does not allege that he might be denied medical services if he is unable to pay the copayment fee, but instead acknowledges that the statute and TDCJ Notice provide that medical services will not be denied in such a circumstance. Accordingly, he does not allege that

prison officials will be deliberately indifferent to any serious medical needs, in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976).

The fact the inmates with adequate resources are required pay a small cost for their health care is not unconstitutional. As then-Judge Alito explained in a Third Circuit decision:

> If a prisoner is able to pay for medical care, requiring such payment is not deliberate indifference to serious medical needs. Instead, such a requirement simply represents an insistence that the prisoner bear a personal expense that he or she can meet and would be required to meet in the outside world.

*Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997) (citation and quotations omitted). Other courts have consistently reached the same conclusion and held that similar copayment policies do not violate the Eighth Amendment if they do not interfere with the timely and effective treatment of serious medical needs. *See, e.g., Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985) (concluding that inmate does not state a claim under Eighth Amendment when he cannot allege that he was denied medical treatment because of inability to pay nominal copayment); *Breakiron v. Neal*, 166 F. Supp.2d 1110, 1115-16 (N.D. Tex. 2001) (finding no Eighth Amendment violation based on copayment charge because there is no constitutional right to free health care and mere copayment does not show deliberate indifference); *Gardner v. Wilson,* 959 F. Supp. 1224, 1228 (C.D. Cal.1997) (concluding no Eighth Amendment claim when no allegation that defendants failed to provide or delayed medical care, but only that required to pay for care); *Bihms v. Klevenhagen*, 928 F. Supp. 717, 718 (S.D. Tex. 1996) (medical copayment system did not violate Eighth Amendment when prisoner did not allege that he was denied care).[1]

---

[1] *See also, e.g., Hutchinson v. Belt*, 957 F. Supp. 97, 100 (W.D. La. 1996); *Hudgins v. DeBruyn*, 922 F. Supp. 144, 150-51 (S.D. Ind. 1996); *Johnson v. Dep't of Pub. Safety & Corr. Serv.*, 885 F. Supp. 817, 820 (D. Md.1995); *Martin v. Debruyn*, 880 F. Supp. 610, 614 (N.D. Ind.1995); *White v. Corr. Med. Servs., Inc.*, No. 03-2097, 2004 WL 614577, at *2 (6th Cir. Mar. 24, 2004);

Morris does offer an observation by an intermediate Texas court of appeals in a 1992 decision that "[t]he right of an incarcerated prisoner to free medical care is recognized under the Texas statute and under the United States Constitution." *Sisters of St. Francis*, 836 S.W.2d at 725. But that statement lacks any significant Eighth Amendment analysis and stands alone without any company in decisions by other courts. In addition, the cited decision did not concern copayment obligations by prisoners, but instead the State's liability to a private medical facility caring for an inmate on an emergency medical reprieve.

The Court recommends that the District judge conclude that Morris fails to allege a cognizable claim for relief under § 1983 based on the Eighth Amendment.

### 2. Due Process

Morris asserts that the imposition of the $100 health care fee is a violation of the Fourteenth Amendment's guarantee of due process. Compl. at 3; Opp. at 6-7. He argues that an inmate has a protected property interest in the funds in his inmate trust account and cannot be deprived of the funds without due process. *Id.* at 6. More specifically, he contends that TDCJ has given inadequate notice of exactly what will trigger the copayment obligation because the posted notice in the TDCJ housing units includes information at variance with the language of the statute. *Id.* at 7. Morris also invokes Texas Government Code § 2001.023, which requires state agencies to give at least thirty-

---

*McCall v. Johnson County Sheriff's Dep't*, No. 03-3088, 2003 WL 21716433, at *1 (10th Cir. July 25, 2003); *Watford v. Balicki*, Civil Action No. 09-5271 (NLH), 2010 WL 1752510, at *10 (D. N.J. Apr. 30, 2010); *Cheruk v. Sw. Reg'l Jail Auth. "Med.,"* No. 7:09CV00257, 2009 WL 2596536, at *4 (W.D. W. Va. Aug. 20, 2009); *Calloway v. Woods*, Civ. Action No. 1:04cv610, 2006 WL 3166427, at *3 (E.D. Tex. Nov. 1, 2006); *George v. Smith*, No. 05-C-403-C, 2005 WL 1812890, at *12 (W.D. Wis. Aug. 2, 2005).

days notice before adopting a rule and to file a proposed rule with the Texas Secretary of State for publication in the Texas Register. *Id.*

Perry contends that Morris does not dispute that he will not be denied medical care if he is unable to pay the $100 fee, and as such, Morris is unable to show that he will be deprived of a liberty or property interest without due process of law. Mot. at 11.

Morris's particular due process objection is unavailing. First, his complaint centers on a characterization that the agency notice is "at variance" with the language of the statute based on the notice's elaboration of health care scenarios that will not trigger the statutory copayment. *Compare* TEX. GOVERNMENT CODE § 501.063 (limiting copayment to health care services when an inmate "initiates a visit to a health care provider"), *with* T.D.C.J. Health Care Fee Notice to Offenders (Def. Mot. Ex. C) (listing circumstances excluded from copayment). The Notice states that inmates will not be charged for a health care visit that is for "an emergency or life-threatening situation," "follow-up services recommended by the health care staff," "chronic care (including communicable diseases such as HIV, AIDS and TB)," "prenatal care," "health screening and evaluations related to the diagnostic and reception process," or "health care services necessary to comply with State law and regulations." *Id.* One of an agency's primary roles is to develop and implement regulations based on legislative enactments, and the TDCJ Notice merely reflects the performance of that task. *See, e.g., Galveston County v. Texas Dep't of Health*, 724 S.W.2d 115, 123 (Tex. App.–Austin 1987, writ refused n.r.e.) ("the ultimate purpose of any administrative agency and its proceedings is the administration of a statute or statutes in order to effectuate a purpose laid down by the Legislature"); *Browning-Ferris, Inc. v. Brazoria County*, 742 S.W.2d 43, 53 (Tex. App.–Austin 1987, no writ) ("[a]dministrative agencies exist to administer statutes").

In addition, to the extent that Morris is making a due process complaint about the TDCJ Notice, under the Due Process Clause, a rational relationship to a legitimate government interest will normally suffice to uphold a regulation. *See Turner*, 482 U.S. at 89, 107 S. Ct. at 2261. Morris does not suggest that the Notice lacks such a relationship to the statute and its objective, and no shortcomings appear in this regard. To the extent that Morris makes a void-for-vagueness challenge, it must also fail because "void for vagueness" means that criminal responsibility should not attach when a person could not reasonably understand that his contemplated conduct is prohibited. *See, e.g., United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 33, 83 S. Ct. 594, 598 (1963). The Notice at issue is not susceptible to a vagueness challenge. It does not prohibit particular conduct, but instead assesses a fee for certain health care services and, in any event, the Notice is sufficiently clear. Moreover, Morris does not suggest that the TDCJ grievance procedures will be unavailable for challenging copayment assessments.

With regard to Morris's complaint that the statute was enacted without complying with Texas Government Code § 2001.023, that notice requirement, per its plain terms, applies only to state agency rule-making, and not to the legislative process. TEX. GOV'T CODE § 2001.023 ("A *state agency* shall give at least 30 days' notice . . . .A *state agency* shall file notice . . .") (emphasis added). Moreover, even if the law was somehow not in compliance with Texas Government Code § 2001.023, this possible violation would not give rise to a due process claim. *See McIntosh v. Partridge*, 540 F.3d 315, 324 (5th Cir. 2008) ("[A] violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation. The fundamental issue in due process law is not whether state officials violated state law, but whether they provided the plaintiff with the [federal] constitutional minima.") (citation and quotation omitted). In addition, legislation of general

13

applicability is not subject to due process requirements. *See, e.g., Texaco, Inc. v. Short*, 454 U.S. 516, 537, 102 S. Ct. 781, 796 (1982); *Velasquez v. Woods*, No. 2:00-CV-0070, 2002 WL 32319000, at *2 (N.D. Tex. Oct. 28, 2002) ("any due process challenge to the application of the Texas DNA registration statute fails because the official action being challenged is legislative").

Lastly, all courts that have considered due process challenges to similar copayment requirements have upheld the copayments. *See, e.g., Meyers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996) (due process standards for notice satisfied when notice of policy requiring county prisoners to pay for medical services was posted in jail cells and jail advised medical personnel that no inmate would be denied medical services if inmate indicated inability to pay); *Breakiron*, 166 F. Supp.2d at 1116 (rejecting due process claim and explaining that "[d]educting payments from a prisoner's inmate trust account for medical services does not appear to be an arbitrary or wrongful government action").[2] For all of these reasons, Morris fails to state a claim that the copayment statute violates his due process rights.

### 3. Ex Post Facto Violation

Morris also contends that imposing the health care fee on inmates is an ex post facto violation. Compl. at 3; Opp. at 7-8. He argues that the imposition of additional fees beyond what

---

[2] *See also, e.g., Gardner*, 959 F. Supp. at 1229 (rejecting due process challenge to medical copayment when inmate had notice of the law, he initiated the medical visit, and a grievance system was available); *Robinson*, 932 F. Supp. at 645 ("While an inmate does have a protected property interest in the funds in his or her prison account, an inmate does not have a right not to use such funds for the payment of services."); *Bihms*, 928 F. Supp. at 718 (due process does not require prior notice of deduction of medical copayment); *Baker v. Gonzalez*, No 06-CV-91-HRW, 2007 WL 141050, at *2 (E.D. Ky. Jan 17, 2007) (rejecting due process challenge to federal copayment policy because Bureau of Prisons gave inmates advance notice and opportunity to challenge particular fees), *rev'd on other grounds*, *Baker v. Mukasey*, No. 07-5234, 2008 WL 2622659 (6th Cir. July 1, 2008); *Calloway*, 2006 WL 3166427, at *3 (explaining that "[d]educting payments from a prisoner's inmate trust account is not an arbitrary or wrongful government action" and dismissing due process claim).

was assessed in his judgment of conviction is added punishment, and the statute is retroactive by imposing a fee that did not exist when he was first incarcerated in 2005.

Perry argues that Morris cannot satisfy the two requirements for showing an ex post facto violation because the copayment will be charged prospectively (and not retroactively) and the copay assessment does not increase Morris's punishment for his convicted crimes. Mot. at 12.

The United States Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. CONST. art. I, § 10, cl. 1. An ex post facto law is one that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S. Ct. 2715, 2719 (1990); *see also Lynce v. Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 896 (1997) ("To fall within the ex post facto prohibition, a law must be retrospective–that is, 'it must apply to events occurring before its enactment–and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime.'") (quotation and citation omitted). The clause is intended to protect against legislative abuses and to provide fair notice of the consequences of criminal actions. *See Miller v. Florida*, 482 U.S. 423, 429-30, 107 S. Ct. 2446, 2451 (1987).

The Supreme Court has provided a framework for determining whether a law constitutes punishment forbidden by the Ex Post Facto Clause. *See Smith v. Doe*, 538 U.S. 84, 92, 123 S. Ct. 1140, 1147 (2003); *see also United States v. Young*, 585 F.3d 199, 204 (5th Cir. 2009). Courts apply an "intent/effects" test to determine whether a law imposes "punishment" violating the Ex Post Facto Clause. Under this test, courts determine whether: (1) the legislature intended the sanction to be punitive; and (2) if the sanction is so "punitive" in effect as to preclude legitimately viewing it as regulatory or civil in nature. *United States v. Ursery*, 518 U.S. 267, 288, 116 S. Ct. 2135, 2147

(1996). If the legislature intended to impose punishment, then the law is necessarily unconstitutional if it is also retroactive. *Smith*, 538 U.S. at 92, 123 S. Ct. at 1147. On the other hand, if the legislature's "intention was to enact a regulatory scheme that is civil and nonpunitive," then a court must determine "whether the statutory scheme is so punitive either in purpose or effect as to negate [the government's] intention to deem it civil." *Id.* (citations and quotations omitted). A court must defer to the legislature's stated intent; "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (citations and quotations omitted).

Morris fails to allege a punitive purpose on the part of the Texas Legislature. And an examination of the statute demonstrates that the intent of the law is neither overtly nor implicitly punitive. A court discerns a statute's intent by looking first at the words of the statute, and if its words are clear and unambiguous, then the court considers the plain meaning of that intent. *Moore v. Avoyelles Corr. Ctr.*, 253 F.3d 870, 872 (5th Cir. 2001). The text of the copayment statute unambiguously reflects a legislative intent to impose an annual fee on inmates who initiate health care visits and to ensure that an inability to pay this fee is not a basis for denial of access to health care. None of this reflects a punitive purpose. *See* TEX. GOV'T CODE § 501.063. Indeed, Morris acknowledges the avowedly civil, and budgetary, nature of the law by contending that the law lacks a penological purpose. *See, e.g.*, Opp. at 5. The copayment statute serves the nonpunitive goals of reducing the prison system's medical costs and obtaining some measure of reimbursement for those costs. Accordingly, it is not unconstitutionally punitive based on its intent.

The Supreme Court has explained that in analyzing a law for its possible punitive effect, a court should look to the factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83

S. Ct. 554, 567-68 (1963). *Smith*, 538 U.S. at 97, 123 S. Ct. at 1149. Those seven factors are: whether in its necessary operation, the law under challenge "has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose;" *id.*, "whether it comes into play only on a finding of scienter," and "whether the behavior to which it applies is already a crime." *Mendoza-Martinez*, 372 U.S. at 168, 83 S. Ct. at 567 (footnotes omitted).

When these factors are considered, none support the conclusion that the copayment requirement is punitive in nature: a copayment for medical services has not been historically regarded as punitive; the copayment requirement does not impose an affirmative restraint; a copayment does not promote a traditional goal of punishment, but rather concerns prison budgetary constraints; a hundred-dollar annual fee for self-referred medical visits is not excessive in relation to the goal of reducing prison medical costs; the copayment assessment is not tied to a scienter element finding; and the behavior that triggers a copayment–self-referral for medical services–is not conduct that is already criminalized. *See, e.g., Taylor v. Rhode Island*, 101 F.3d 780, 783-84 (1st Cir. 1996) (rejecting ex post facto challenge to supervisory fee assessment as not "punitive" because it was not part of any criminal sentence, it was designed to reimburse costs associated with supervising probationers and parolees, waivers were available to offenders unable to pay, and same fee was assessed against all offenders without regard to nature or severity of offenses).

Moreover, courts that have been presented with ex post facto challenges to similar copayment assessments have consistently rejected such challenges. *See, e.g., Gardner*, 959 F. Supp. at 1230 (rejecting ex post facto claim because the challenged law was "not a criminal statute which

disadvantages a criminal offender," "plaintiff's crime was neither redefined nor was the punishment for plaintiff's criminal acts increased," and the law "was not applied retroactively to events occurring before its passage; to the contrary, it was applied solely after its passage").[3]

Because Morris does not state an ex post facto claim, the Court should dismiss this claim as well.

### 4.    Unreasonable Seizure

Morris contends that the assessment of a copayment constitutes an unreasonable seizure in violation of the Fourth Amendment. Compl. at 3; Opp. at 8-9. He argues that charging the copayment against his inmate trust account is an unreasonable seizure of his property because the statute's copayment assessment is not tied to a reasonable, legitimate penological interest. *Id.* at 9.

Perry asserts that the facts alleged by Morris do not support the type of claim that falls within the Fourth Amendment's search and seizure prohibition, citing a Supreme Court decision addressing the seizure of a person. Mot. at 12-13.

The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'" *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984). Under the Fourth Amendment, a seizure of property "occurs when there is some meaningful interference with an individual's possessory interest in that property." *Id.* A prisoner does have a protected property interest in his prison trust account. *See, e.g., Wilson v. TDCJ-ID*, 168 S.W.3d

---

[3] *See also, e.g., Boyer v. Taylor*, No. CIV. A. 06-694-GMS, 2007 WL 2049905, at *14 (D. Del. July 17, 2007) (holding that co-pay policy is not "punishment" for purposes of Ex Post Facto Clause), *on reconsideration in part*, 2007 WL 3407417 (D. Del. Nov 14, 2007); *Harris v. Ozmint*, C.A. No. 8:05-2209-HMH-BHH, 2006 WL 2471835, *5-*6 (D. S.C. Aug. 24, 2006) (holding that inmate co-pay program was not an unconstitutional ex post facto law because "charges for medical services . . . are clearly not punitive in nature"); *Bailey*, 2001 WL 845446, at *4 (rejecting ex post facto challenge because "the medical copayment rule impose[s] no punishment on the inmates").

756, 760 (Tex. App.–Waco 2008, no pet.); *Brewer v. Collins*, 857 S.W.2d 819, 923 (Tex. App.–Houston [1st Dist.] 1993, no writ).

Under the Fourth Amendment, "searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed." *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir.1994) (internal quotation and citation omitted). Morris's argument that the collection of the copayment from his trust fund account is unreasonable because it is not tied to a valid penological goal must fail. The collection of funds is directly tied to a reasonable goal on the part of the state legislature and TDCJ–that is, to reduce the state's costs in delivering health care services to prisoners by delegating minor financial responsibility to the inmate-patients–and is reasonable under the circumstances. *See supra* II.B.1. Moreover, to the extent that collection of a copayment fee might implicate constitutional concerns, other protections remain:

> That the Fourth Amendment does not protect a prisoner against indefinite dispossession does not mean that he is without constitutional redress for the deprivations that result. The Due Process and Takings Clauses of the Fifth and Fourteenth Amendments stand directly in opposition to state action intended to deprive people of their legally protected property interests. These constitutional protections against the deprivation of private property do not abate at the time of imprisonment.

*Hudson v. Palmer*, 468 U.S. 517, 539, 104 S. Ct. 3194, 3206-07 (1984) (O'Connor, J., concurring); *see also, e.g., Thieleman v. County of Aransas Tex.*, No. CC-08-78, 2010 WL 610651, at *5 (S.D. Tex. Feb.17, 2010) (dismissing claim that taking money from prisoner's account was an illegal seizure "because plaintiff is in prison, and as such, he is no longer guaranteed the protections of the Fourth Amendment").

The Court should conclude that Morris fails to plead a cognizable Fourth Amendment claim with respect to the deduction of the annual copayment fee from his inmate trust account.

## RECOMMENDATION

For these reasons, it is recommended that the Court dismiss Perry as a defendant on the basis of his Eleventh Amendment immunity, grant leave to amend the complaint to substitute Brad Livingston in his official capacity as Executive Director, Texas Department of Criminal Justice, for defendant Perry, grant the motion to dismiss, and dismiss the complaint with prejudice for failure to state a claim upon which relief can be granted.

It is further recommended that Morris should be warned that if, while he is a prisoner, he files more than three actions or appeals that are dismissed as frivolous, malicious, or for failure to state a claim on which relief may be granted, then he will be prohibited from bringing any other actions in forma pauperis unless he is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g).

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

district court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 1ˢᵗ day of December, 2011.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE